**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Bradley Smith, | Case No.: 2:13-cv-039-JAD-GWF |
| Plaintiff, | |
| v. | **Order Granting Defendant's Motion to Dismiss [Doc. 8]** |
| United States of America, | |
| Defendant. | |

Plaintiff Bradley Smith sues the United States Government on a number of legal theories alleging that, during his employment with the Government, his supervisor's hostile treatment induced him to attempt suicide.  *See* Doc. 1.  The United States moves to dismiss the entire action under Fed. R. Civ. Proc. 12(b)(1), arguing that Smith's failure to exhaust his administrative remedies deprives this Court of jurisdiction.  The Court agrees that it lacks subject matter jurisdiction over Smith's claims as pled and grants Smith leave to amend his complaint.

**Background[1]**

Smith's allegations stem from his work as a Human Resource Assistant with the U.S. Department of Veterans Affairs, Southern Nevada Healthcare System ("VA").  Doc. 1 at 2.[2] Smith claims that his VA Human Resource Chief, Donald Zurfluh, subjected him to

---

[1] This factual description is intended only for general background and is not intended as any finding of fact.

[2] Smith's Complaint states that he is currently employed as a Laborer at the VA.  *Id.*  However, Smith's opposition claims that he is a "former" VA employee.  Doc. 10 at 1.  This distinction is immaterial for purposes of the instant motion.

1

unspecified severe and pervasive harassment and a hostile work environment.  Doc. 1 at 2.

In response, Smith applied for an "interim relief request" to the VA, seeking transfer from

existing current work assignment; before this request was granted, however, Zurfluh's hostile

conduct prompted Smith to attempt suicide on October 31, 2012, in his home, "by taking

tylenol pm and put[ting] a bag over [his] head, but the bag fell off and [he] woke up the next

morning."  *Id.* at 2, 14.  Smith was hospitalized in connection with this attempt on that day.

*Id.* at 2.  Smith claims that he then filed an Standard Form-95 claim for damage, injury, or

death within the agency on December 1, 2012, under the Federal Tort Claims Act, 28 U.S.C.

§ 2671, *et seq.*  Doc. 1 at 9.

The government has produced five SF-95s that Smith submitted between November

11, 2012, and December 1, 2012,[3] in which Smith alleged that he suffered negligent infliction

of emotional distress.  His first SF-95, submitted on November 11, 2012, claims

"Employment Negligence" in training, retention, entrustment, and supervision.  Doc. 8-1 at

2.  His second SF-95, submitted on November 17, 2012, brings claims for negligent

confinement, false imprisonment, and first amendment claims for freedom of association.

Doc. 8-1 at 14.  Smith's third SF-95, submitted on November 18, 2012, alleges negligent

misrepresentation and invasion of privacy.  Doc. 8-1 at 19.  Smith's fourth SF-95, submitted

on December 1, 2012, claimed "Conduct unbecoming a federal law enforcement and

oversight agency," for which a *Bivens* action was "forthcoming."  Doc. 8-1 at 23.  According

to the form, Smith's actions were comprised of a "failure to prevent, investigate, and/or

remediate whistle blower retaliation, reprisal, and harassment resulting in the ongoing and

continuation of whistle blower retaliation, reprisal, and harassment" of Smith.  *Id.*  Smith's

fifth and final SF-95 was also submitted on December 1, 2012, and claimed employment

negligence "subsequent to consequential Duty of Care Breach" that resulted in his suicide

attempt.  Doc. 8-1 at 24.

---

[3] The Court uses the date Smith signed these claims, instead of the date these forms were received, for purposes of this motion.  As timeliness of filing these claims is not at issue here, the Court need not pass on whether the filing date or the date of signature should be properly used.

1    On December 20, 2012, Anita Varna, the VA's Acting Regional Counsel, mailed

2 Smith a letter acknowledging Smith's five SF-95s but denying all of five of the claims,

3 reasoning that "all of [Smith's] allegations are personnel issues and therefore not cognizable

4 under the FTCA.  The proper fora for these complaints are the Merit Systems Protection

5 Board (MSPB) and the Equal Employment Opportunity Commission (EEOC)."  Doc. 1 at 7-

6 8.[4]  The letter also informed Smith that since he had exhausted his administrative remedies,

7 he could "file suit directly under the FTCA, which provides for judicial review when an

8 agency denies an administrative tort claim."  *Id.* at 8.

9    On January 9, 2013, Smith filed this action, alleging claims of "Employment

10 negligence," namely negligent supervision and breach of the duty of care (Count 1), and

11 negligent infliction of emotional distress which resulted in his suicide attempt (Count 2).  *Id.*

12 at 3-4.  Smith seeks $300,000 for each of his two counts.  *Id.* at 5-6.  The government now

13 moves to dismiss Smith's suit, alleging that he has failed to plead a case within the court's

14 subject matter jurisdiction.[5]

15                          **Discussion**

16 **A.    Motion to Dismiss**

17    Federal district courts are courts of limited jurisdiction, and "presume[] that a cause

18 lies outside this limited jurisdiction."[6]  Federal Rule of Civil Procedure 12(b)(1) allows a

19 party to move for dismissal of an action for lack of subject matter jurisdiction,[7] which may be

20 attacked either facially or factually.[8]  In so doing, a litigant may "rely on affidavits or any

21

22    [4] The government also argues that to the degree Smith brought discrimination-related charges, these
claims are precluded.  Doc. 8 at 9-10.  Title VII allegations are apparently pending in another case filed in this
23 district, *Smith v. Shinseki*, 2:12-cv-2141-APG-NJK.  The Court finds that Smith has not alleged any such
claims in his complaint in the action currently under consideration, and so declines to address the
24 government's arguments regarding the same.

25    [5] Smith has filed a response, Doc. 10, and the government has filed a reply, Doc. 12.  Smith filed two
additional documents into the record.  Docs. 13, 15.

26    [6] *Kokkonen v. Guardian Life Insurance Co. of Am.*, 511 U.S. 375, 377 (1994).

27    [7] Fed. R. Civ. Proc. 12(b)(1).

28    [8] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

1    other evidence properly before the court."[9]  When a challenge to subject matter jurisdiction

2    has been properly raised, the opposing party must "present affidavits or any other evidence

3    necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter

4    jurisdiction."[10]

5         **1.    Reliance on Evidence of Other SF-95s**

6         The government attaches all five of the SF-95's that Smith submitted between

7    November 11, 2012 and December 1, 2012, even though Smith attached only one of his

8    December 1, 2012 Sf-95s to his Complaint.  *See* Doc. 8-1.  Smith claims that the four

9    additional SF-95s are "immaterial" to his cause of action, so he elected not to reference them

10   in his Complaint.  Doc. 10 at 2.  In so doing, Smith relies on the rule, developed for Rule

11   12(b)(6) motions to dismiss for failure to state a claim for which relief can be granted, that a

12   court may "generally consider only allegations contained in the pleadings, exhibits attached

13   to the complaint, and matters properly subject to judicial notice" without converting the

14   motion to one for summary judgment under Rule 12(d).[11]

15        Smith's reliance is misplaced.  When considering a motion to dismiss for lack of

16   subject matter jurisdiction, the Court may "rely on affidavits or any other evidence properly

17   before the court"[12] without converting the motion to one for summary judgment.[13]  Extrinsic

18   evidence, in this case documents not referenced in Smith's complaint or attached thereto, is

19   relevant for purposes of ascertaining jurisdiction.[14]  Indeed, the December 20, 2012 letter

20   which Smith received from the VA which he claims operated to exhaust his administrative

21   remedies referred and discussed all five SF-95s.  *See* Doc. 1 at 7-8.  The Court finds the

22

23        [9] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

24        [10] *Id.*

25        [11] Fed. R. Civ. Proc. 12(b)(6); 12(d); *Swatz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

26        [12] *St. Clair*, 880 F.2d at 201.

27        [13] *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

28        [14] *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140-41 & n.5 (9th Cir. 2003).

1   context of the other SF-95s helpful in ascertaining the jurisdictional basis of the suit.

2        Even if Smith were somehow correct that the Rule 12(b)(6) standard bars documents

3   not "referenced" in the complaint, Smith's SF-95s are formal filings in the administrative

4   claims process and are properly considered as matters of public record.  Under Federal Rule

5   of Evidence 201(b)(2), the court may take judicial notice of documents where "a fact is not

6   subject to reasonable dispute because it . . . can be accurately and readily determined from

7   sources whose accuracy cannot reasonably be questioned."[15]  The Seventh and Fifth Circuits

8   have specifically permitted a Court to take judicial notice of documents which show filing of

9   an administrative claim such as a Standard Form 95,[16] a position no Ninth Circuit authority

10  contravenes.  Thus, for either reason, the Court may consider all five of Smith's SF-95s in

11  deciding Defendant's motion to dismiss.

12       **2.      The CSRA as an FTCA Bar**

13       The Government's factual attack argues, consistent with its December 20, 2012, letter,

14  that the allegations in Smith's SF-95s pertain to "personnel actions" properly brought under

15  the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, *et seq.*  Doc. 8 at 8.  This, in turn,

16  required Smith to present his claims to the Merit Systems Protection Board ("MSPB"),

17  instead of styling them as FTCA claims and bringing them before the District Court.  *See*

18  Doc. 8 at 8.  Smith concedes that the CSRA provides a common remedy for his grievances,

19  which "effectively eliminates/nullifies any thought of . . . filing a future complaint regarding

20  those particular Tort Claims in this Court venue."  Doc. 10 at 2.  Even if the Court was

21  inclined to consider Smith's statement as a judicial admission, the plain language of the

22  concession goes only to any *future* filing he may make, and so the Court is obligated to

23  address the merits of his present action.

24       The Federal Tort Claims Act "waives the federal government's sovereign immunity,

25  rendering the United States liable in the same manner and to the same extent as a private

26  ────────────────

27       [15] Fed. R. Evid. 201(b)(2).

28       [16] *Palay v. United States*, 349 F.3d 418, 425 & n.5 (7th Cir. 2003); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 475 (5th Cir. 2002).

1  individual under like circumstances."[17]  This broad waiver is qualified, however, when the

2  claimed conduct falls within a comprehensive administrative remedial scheme.[18]  The CSRA

3  is such a scheme, as it permits federal employees to challenge their employers' "prohibited

4  personnel practices,"[19] which include taking "personnel action[s]" violative of its merit

5  system principles.[20]  A "personnel action" is broadly defined, particularly as it relates to an

6  action which constitutes a "significant change in duties, responsibilities or working

7  conditions."[21]

8       On the whole, the majority of the conduct alleged in Smith's five SF-95's is

9  comprised of "personnel actions" within the CSRA's cognizance—particularly his November

10  12, 2012 SF-95, pertaining to actions such as training, retention, entrustment, and

11  supervision.  Doc. 8-1 at 2.[22]  The fact that Smith has styled them as "employment

12  negligence" and "negligent infliction of emotional distress" is of no moment.  For example,

13  in *Mangano v. United States*, the Ninth Circuit considered whether an FTCA clam for

14  intentional infliction of emotional distress and intentional interference with the right to

15  practice a profession, stemming from an employer's alleged retaliation for an employee's

16  whistleblowing activities, fell under the FTCA.[23]  The Court found that the alleged

17  retaliation, which consisted of institution of administrative proceedings against a government

18  doctor after complaints were filed against him by his supervisor was a "quintessential

19  personnel action[]" that should have been brought under the CSRA.[24]  For similar reasons,

20

21  [17] 28 U.S.C. § 2674; *Ritchie v. United States*, 733 F.3d 871, 874 (9th Cir. 2013) (internal quotation omitted).

22  [18] *See Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008).

23  [19] 5 U.S.C. § 2302.

24  [20] 5 U.S.C. § 2302(b)(11).

25  [21] *Id.* at § 2302(a)(2)(A)(xi).

26  [22] *See id.* at § 2302(a)(2)(A).

27  [23] *Mangano*, 529 F.3d at 1247.

28  [24] *Id.*

6

1   the Court finds that Smith's allegations state claims regarding "personnel actions" within the

2   CSRA.

3       Smith also attempts to allege *Bivens* actions for negligent confinement, false

4   imprisonment, and First Amendment claims for freedom of association in his November 17,

5   2012, SF-95. Doc. 8-1 at 14. And, one of Smith's December 1, 2012, SF-95s that a *Bivens*

6   action was "forthcoming" for "failure to prevent, investigate, and/or remediate whistle

7   blower retaliation, reprisal, and harassment resulting in the ongoing and continuation of

8   whistle blower retaliation, reprisal, and harassment" of Smith. Doc. 8-1 at 23. These claims

9   also fail. In *Bivens v. Six Unknown Named Agents of the Federal Narcotics Bureau*, the

10  Supreme Court held that a federal officer who acted under color of law could be liable for

11  damages caused after a violation of Fourth Amendment rights.[25] *Bivens* liability is not

12  universally available for all other Constitutional provisions.[26] However, the Court need not

13  speculate whether Smith's recovery is possible because the Ninth Circuit held in *Saul v.*

14  *United States* that an employee may not bypass the CSRA by styling employment-related

15  claims as constitutional torts—even where the prospective *Bivens* action concerns activities

16  not explicitly provided for under the CSRA.[27] Thus, Smith may not utilize constitutional tort

17  principles to circumvent the CSRA.

18      Finally, Smith alleges invasion of privacy and negligent misrepresentation in his

19  November 18, 2012 SF-95; a December 1, 2012 SF-95 also claims employment negligence

20  "subsequent to consequential Duty of Care Breach," which resulted in Smith's suicide

21  attempt. Doc. 8-1 at 19, 24. To the degree Smith's claims are properly classified as common

22  law tort claims, *Saul* forecloses recovery thereunder. In *Saul*, a federal employee brought

23  claims for negligent infliction of emotional distress, for which he faulted two of his

24

25

26  ───────────────
    [25] *Bivens v. Six Unknown Named Agents of the Fed. Narcotics Bureau*, 403 U.S. 388 (1971).

27  [26] *See Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988).

28  [27] *Saul v. United States*, 928 F.2d 829, 835-40 (9th Cir. 1991).

7

supervisors.[28]  He claimed that because his tort claim related to the deterioration of his working relationship but not his pay, his claim for relief was not a CSRA remedy.[29]  The *Saul* court found that this argument focused on the "wrong fact," and pointed out that a state court claim could be preempted through a conflict between competing state and federal concerns—the controlling factor for which "must be whether the employee could challenge the action through the CSRA."[30]  And even to the degree that a CSRA remedy was not available for Smith's claims, the same are still precluded because in enacting the CSRA, congress clearly intended to occupy the field of workplace relations and left "no room for [common law tort claims] to operate."[31]

In sum, the CSRA preempts Smith's FTCA actions, and Smith's proper remedy lies in filing his claims with the Merit Systems Protection Board.  Smith has failed to avail himself of this remedy, and the Court is without jurisdiction to hear his claims, which must now be dismissed.[32]

### 3.  FECA as an FTCA Bar

After conceding that the CSRA applies to his cause of action, Smith proposes as an alternative remedy that he suffered an "off work" injury when he attempted suicide at home, such that he had the option of filing his claim either before an administrative agency, or through the FTCA.  Doc. 10 at 2.  The Government's reply points out that a separate statutory scheme governs workers' compensation recovery, such that an FTCA claim is improvidently brought.  *See* Doc. 12 at 3-4.

The Federal Employee's Compensation Act ("FECA") governs workplace-related

---

[28] *Id.* at 831.

[29] *Id.* at 841.

[30] *Id.*

[31] *Id.* at 843.

[32] The Government also argues that even if Smith had exhausted these administrative remedies by presenting his claims to the Merit Systems Control Board, any appeal would be taken to an Article I court, not an Article III court.  *See* Doc. 8.  The Court need not reach this argument to dispose of Smith's claims.

1   injuries, 5 U.S.C. § 8116(c), with the Secretary of Labor empowered to "administer and
2   decide all questions arising under" FECA.  5 U.S.C. § 8145.  The Labor Secretary's decision
3   is not subject to judicial review, 5 U.S.C. § 8128(b), and the Ninth Circuit has found that a
4   federal employee may not bring a claim an FTCA suit so long as a "substantial question"
5   exists whether the subject matter of the suit could have been properly brought under FECA.
6   *Figueroa v. United States*, 7 F.3d 1405, 1407 (9th Cir. 1993).

7        Smith's alternative "off-site" injury theory fails because the Employees'
8   Compensation Appeals Board ("ECAB"), the adjudicative body charged with reviewing
9   FECA claims, has exercised jurisdiction over suicide claims such that there is a "substantial
10  question" that the suit should have been properly brought there.[33]  The Court thus lacks
11  jurisdiction to hear Smith's claim if styled as a "workers compensation" action, and Smith
12  cannot avoid dismissal of his claims on this basis.

13  **B.     Leave to Amend**

14       Although Smith has never requested leave to amend his allegations, "a district court
15  should grant the plaintiff leave to amend if the complaint can possibly be cured by additional
16  factual allegations."[34]  The court abuses its discretion when it dismisses a complaint without
17  previously granting leave to amend or determining that the allegations, if adequately pled,
18  could survive a motion to dismiss.[35]  Indeed where, as here, a motion to dismiss has been
19  filed before an answer, a motion for leave to amend "must be granted if filed."[36]  Although
20  Smith has not sought leave to amend his complaint, out of an abundance of caution and in the
21  interest of fairness, the Court grants Smith 30 days from the date of this Order to file any
22  amend complaint.  Plaintiff is cautioned that under Local Rule 15-1 any amended

---

23

24       [33] *See, e.g.*, *In re: Linda Krotzer*, 46 E.C.A.B. 754, 760 (Emp. Comp. App. Bd. 1995); *In re: Carolyn King Palermo*, 45 E.C.A.B. 308, 308 (Emp. Comp. App. Bd. 1995).

25       [34] *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012).

26
27       [35] *See Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1217-18 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

28       [36] *Benson*, 673 F.3d at 1217-18 (quoting (*Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 (9th Cir. 1963)).

1   complaint that is filed with the court must be complete in itself without reference to prior

2   filings.  Any allegations, parties, or requests for relief from prior papers that are not carried

3   forward and reasserted in the amended complaint no longer will be before the court and will

4   be deemed abandoned.  Plaintiff is further cautioned that his failure or inability to cure the

5   deficiencies identified in this order and to plead sufficient facts  to state a viable legal claim

6   will result in the dismissal of his claims with prejudice.

7   **C.      Smith's Supplemental Filings**

8           After the Government filed its reply to the motion to dismiss, Smith submitted both a

9   response, Doc. 13, and an amended response, Doc. 15.  Smith's filings are surreplies.  Local

10  Rule 7-2(a) governs motion briefing.[37]  Nothing in the rule authorizes any documents beyond

11  the motion, response, and reply "unless otherwise ordered by the Court."[38]  Courts in this

12  district routinely interpret Local Rule 7-2 to allow surreplies only by leave of court, "and

13  only to address new matters raised in a reply to which a party would otherwise be unable to

14  respond."[39]  Filing of surreplies is highly disfavored, as it typically constitutes a party's

15  improper attempt to have the last word on an issue[40]—even where, as here, the filer is

16  proceeding *pro se*.[41]  When a party does nothing more than seek to reserve the right to amend

17  or supplement its filing, the "reservation" preserves nothing because "allowing a party to file

18  supplemental arguments and evidence whenever they wish it would subvert the local rules

19  that are in place to ensure timely responses."[42]  As Smith has failed to seek leave to file his

20  surreplies and it does not appear that surreplies are justified by the contents of the replies, the

21  Court declines to consider the arguments made in those documents.

22

23      [37] Nev. LR 7-2(b).

24      [38] *Id.* at 7-2(c).

25      [39] *Kavnick v. City of Reno*, 2008 WL 873085, at *1 n.1 (D. Nev. 2008) (emphasis omitted).

26      [40] *See Avery v. Barsky*, 2013 WL 1663612, at *2 (D. Nev. Apr. 17, 2013) (citation omitted).

27      [41] *See Odoms v. Skolnik*, 2011 WL 2161391, at *5 (D. Nev. Apr. 18, 2011).

28      [42] *Toromanova v. Wells Fargo Bank, N.A.*, 2013 WL 1314974, at *2 (D. Nev. Mar. 28, 2013) (internal quotation omitted).

**Conclusion**

Accordingly, based upon the reasons above and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that the United States' Motion to Dismiss [Doc. 8] is **GRANTED.**

It is **FURTHER ORDERED** that Smith has 30 days leave of court to file an amended complaint if he can cure the claim deficiencies identified in this order.  Plaintiff is cautioned that under Local Rule 15-1 any amended complaint that is filed with the court must be complete in itself without reference to prior filings.  Any allegations, parties, or requests for relief from prior papers that are not carried forward and reasserted in the amended complaint no longer will be before the court and will be deemed abandoned.  Plaintiff is further cautioned that his failure or inability to cure the deficiencies identified in this order and to plead sufficient facts  to state a viable legal claim will result in the dismissal of his claims with prejudice.

DATED: March 28, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE